IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| My Oil Key, LLC ) | Case No.: 25-cv-3944 |
| Plaintiff, ) | |
| v. ) | Judge: Hon. Sharon Johnson Coleman |
| Nasavalo ) | Magistrate: Hon. Daniel P. McLaughlin |
| Defendant. ) | |

**SECOND AMENDED COMPLAINT**

My Oil Key, LLC ("Plaintiff"), hereby files this Complaint for patent infringement against Amazon.com Store Nasavalo ("Defendant"), on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

**THE PARTIES**

1. Plaintiff is a Utah limited liability company with a principal place of business located in Clinton, Utah. Plaintiff owns the United States Patent which is attached as Exhibit 1. (hereafter "Asserted Patent").

2. The Asserted Patent is being infringed by Defendant. This infringing behavior harms Plaintiff.

3. Defendant is believed to be reside in a foreign jurisdiction. The true name, identity, and address of Defendant is currently unknown.

4. Defendant conducts its illegal operations through its fully interactive commercial store on the third-party platform Amazon.com ("Infringing Webstore"). Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit and/or infringing

products that violate Plaintiff's intellectual property rights to consumers within the United States, including the State of Illinois and the Northern District of Illinois. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

5. Defendant has sold products that infringe the Asserted Patent through Amazon.com ASINs B0CJTDQTN7, B0CH7C3VT8, B0CXYVQLK8, B0CXYVZ4QR, and B0CY6Y34CN ("Counterfeit Products"). True and accurate records of these ASINs and order information are attached as Exhibit 2.

6. Through the operation of its Infringing Webstore, Defendant is directly and personally contributing to, inducing and engaging in the sale of Counterfeit Products.

7. Upon information and belief, Defendant knowingly and willfully manufacturing, importing, distributing, offering for sale, and selling Counterfeit Products.

8. Defendant intentionally conceals its identity and the full scope of its counterfeiting operations in an effort to deter Plaintiff from learning Defendant's true identity and the exact interworking of Defendant's illegal counterfeiting and infringing operations.

## PLAINTIFF'S PATENT

9. The Asserted Patent was duly and legally issued by the United States Patent and Trademark Office.

10. Plaintiff is the lawful owner of the Asserted Patent. Plaintiff is the owner and assignee of all substantial rights, title and interest in the Asserted Patent, including the right to bring this action and enforce the Asserted Patent against infringers, and to collect damages for all relevant times.

## PLAINTIFF'S TRADEDRESS

11. Plaintiff sells patented oil opener keys through etsy.com. Plaintiff sells different styles and shapes of oil opener keys that practice the Asserted Patent.

12. One very successful style of oil opener key sold by Plaintiff is the "Big Cheese."

13. Plaintiff designed the "Big Cheese" design to resemble a block of Swiss cheese as seen from the side. The "Big Cheese" design is a rectangular shape oil opener key with three circular apertures in the middle of the rectangle, a half circle cutout on one end of the long side of the rectangle, and a second half circle cutout on the opposite end of the other long side of the rectangle (hereafter "Big Cheese Design"). Attached as Exhibit 3 is a true and accurate copy of Plaintiff's product showing the "Big Cheese Design."

14. Plaintiff is the owner of the Big Cheese Design.

15. The Big Cheese Design is valid, distinctive, and nonfunctional.

16. Plaintiff has promoted the Big Cheese Design and the Big Cheese Design has generated consumer goodwill and recognition for Plaintiff's products.

17. Plaintiff has not licensed or assigned the Big Cheese Design to any of the Defendant in this matter.

## JURISDICTION AND VENUE

18. This action arises under the patent laws of the United States, Title 35 of the United States Code, and the trademark laws of the United States, Title 15 of the United States Code. This Court has original jurisdiction over this action pursuant to 35 U.S.C. § 1 *et seq.*, 15 U.S.C. § 1121, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiff's claims for unlawful and deceptive acts and practices under the laws of the State of Illinois.

19. This Court has personal jurisdiction over Defendant in that it transacts business in the State of Illinois and in the Northern District of Illinois. See Exhibit 2.

20. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 in that the Defendant is entities or individuals subject to personal jurisdiction in this District. Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendant directly target business activities towards consumers in the State of Illinois. Specifically, Defendant has targeted sales to Illinois residents, offered shipping to the United States, including Illinois, accepted payment in U.S. dollars and, on information and belief, have sold products infringing Plaintiff's patent to residents of Illinois. The Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## BACKGROUND FACTS

21. Plaintiff is engaged in the business of manufacturing, distributing, and retailing products covered by the Asserted Patent (collectively, "Plaintiff's Products"). Defendant's sales of similar and substandard copies of Plaintiff's Products ("Counterfeit Products") are in violation of Plaintiff's intellectual property rights and are irreparably damaging Plaintiff.

22. Plaintiff is the owner of all rights, title, and interest in and to, the Asserted Patent and Big Cheese Design. The Asserted Patent is valid, subsisting, and enforceable.

23. Plaintiff's product, symbolized by the Big Cheese Design, is a unique and original design.

24. Plaintiff maintains quality control standards for all of Plaintiff's products, including those sold under the Big Cheese Design.

25. The Asserted Patent and Big Cheese Design have never been assigned or licensed to the Defendant in this matter.

26. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, marketing, and otherwise promoting products covered by the Big Cheese Design.

27. Upon information and belief, at all times relevant hereto, Defendant has had full knowledge of Plaintiff's ownership of the Asserted Patent and Big Cheese Design, including its exclusive right to use and license such intellectual property.

28. Recently, and for a while in the past, Plaintiff has identified products covered by the Asserted Patent on the Infringing Webstore and felt the impact of Counterfeit Products designed to resemble authorized retail Internet stores selling the genuine products that Defendant had reproduced, displayed, and distributed without authorization or license from Plaintiff in violation of the Asserted Patent and Big Cheese Design.

29. Defendant has manufactured, imported, distributed, offered for sale, and sold Counterfeit Products infringing the Asserted Patent and Big Cheese Design and continues to do so.

30. Defendant, without authorization or license from Plaintiff, knowingly and willfully used and continues to use the Asserted Patent and Big Cheese Design in connection with the advertisement, offer for sale, and sale of the Counterfeit Products, through, *inter alia*, the Internet. The Counterfeit Products are not genuine products sold by Plaintiff under the Asserted Patent. The Plaintiff did not manufacture, inspect, or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution.

31. Defendant falsely advertised the sale of illegitimate products through the Infringing Webstore. Defendant's Infringing Webstore listings appear to unknowing consumers to

be legitimate web stores and listings, authorized to sell genuine products bearing the Big Cheese Design.

32. Defendant also deceives unknowing consumers by using the Big Cheese Design without authorization within the content of the listings on Infringing Webstore in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches.

33. Indeed, U.S. Customs and Border Protection ("CBP") reports in a January 2020 publication on counterfeiting that commonly owned and/or interrelated enterprises have many online marketplace profiles that appear unrelated:

> Platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, nor to link one seller profile to other profiles owned by that same business, or by related businesses and owners. In addition, the party that appears as the seller on the invoice and the business or profile that appears on the platform to be the seller, may not always be the same. This lack of transparency allows one business to have many different profiles that can appear unrelated.

34. Upon information and belief, Defendant will continue to register or acquire listings for the purpose of selling Counterfeit Products that infringe upon the Asserted Patent and Big Cheese Design unless preliminarily and permanently enjoined.

35. Plaintiff has no adequate remedy at law.

### COUNT ONE
### PATENT INFRINGEMENT
### (35 U.S.C. § 271)

36. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

37. Plaintiff's Asserted Patent is valid and enforceable.

38. Defendant is making, using, offering for sale, selling, and/or importing into the United

States for subsequent sale or use Counterfeit Products that infringe directly and/or indirectly the claims in the Asserted Patent.

39. The Defendant, in violation of 35 U.S.C. § 271, has infringed and continues to infringe all claims of the Asserted Patent, directly or indirectly, by making, using, offering to sell, selling, and/or importing the Counterfeit Products in the United States.

40. The Defendant has willfully and deliberately infringed the claims of the Asserted Patent. The Defendant's infringement of the Asserted Patent is obvious and notorious. The Defendant has no good faith basis that the Unauthorized Products do not infringe the Asserted Patent. The willful infringement, without regard to Plaintiff's patent rights, constitutes egregious and wanton conduct sufficient to establish willful infringement.

41. By reason of the ongoing and continuous infringement of the Asserted Patent by the Defendant, Plaintiff is entitled to the entry of a permanent injunction enjoining the Defendant from further infringing Plaintiff's patent rights, pursuant to 35 U.S.C. § 283.

42. Plaintiff has suffered, and is continuing to suffer, damages as the Defendant's infringement of the Asserted Patent, and Plaintiff is entitled to compensation, including Defendant's profits, and other monetary relief to the fullest extent allowed by law, including attorneys' fees, pursuant to 35 U.S.C. §§ 284, 285, and 289.

**COUNT TWO**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF BIG CHEESE DESIGN**
**(Lanham Act, 15 U.S.C. § 1125)**

43. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

44. The Counterfeit Products sold and offered for sale by Defendant is of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such,

Defendant's use is likely to cause confusion to the general purchasing public.

45. By misappropriating and using the Plaintiff's Big Cheese Design, Defendant misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

46. Defendant's unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to Defendant's profit and to the Plaintiff's great damage and injury.

47. Defendant's aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendant's use of the Big Cheese Design in connection with its goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

48. The Plaintiff has no adequate remedy at law and, if the Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

49. Defendant misrepresented and failed to disclose material facts related to Plaintiff's Products including, but not limited to:

   a. That its offerings were unauthorized reproductions;

   b. Its lack of relationship and unaffiliation with Plaintiff, the official creator of Plaintiff's Products;

   c. The counterfeit nature of the Defendant's products offered.

50. By manufacturing, importing, exporting, advertising, marketing, promoting, distributing,

displaying, offering for sale, selling, and/or otherwise dealing in the Counterfeit Products, Defendant has actually offered and did ship goods in interstate commerce.

51. Likewise, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Counterfeit Products, Defendant has traded off the extensive goodwill of Plaintiff and Plaintiff's Products to induce, and did induce and intends and will continue to induce, customers to purchase its Counterfeit Products, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendant to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through nationwide marketing, advertising, sales, and cumulative consumer recognition.

52. Defendant's advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship, or quality of Defendant's Counterfeit Products.

53. Defendant knew, or by the exercise of reasonable care should have known, that its advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in the Counterfeit Products and its continuing advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

54. As a direct and proximate result of Defendant's aforementioned wrongful actions,

Plaintiff has been and will continue to be deprived of substantial sales of his products marketed under Plaintiff's Products, as well as other similar products.

55. The Plaintiff has no adequate remedy at law and, if the Defendant's activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to his goodwill and reputation.

56. As a result of Defendant's actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendant's profits stemming from its infringing activities, and exemplary or punitive damages for Defendant's intentional misconduct in amounts to be determined at trial.

## COUNT THREE
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES
## (815 ILCS 510)

57. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

58. The Counterfeit Products sold and offered for sale by Defendant is of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendant's use is likely to cause confusion to the general purchasing public.

59. By misappropriating and using the Plaintiff's Big Cheese Design, Defendant misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

60. Defendant's unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by

the Plaintiff, all to the Defendant's profit and to the Plaintiff's great damage and injury.

61. Defendant's aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 et seq., in that Defendant's use of the Plaintiff's Products in connection with its goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

62. Plaintiff has no adequate remedy at law and, if the Defendant's activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

63. As a result of Defendant's actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendant's profits stemming from its infringing activities, and exemplary or punitive damages for Defendant's intentional misconduct in amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendant in favor of the Plaintiff on all counts as follows:

1. A judgment against Defendant as to infringement of the claims of the Asserted Patent;
2. Preliminary and permanent injunctions under 35 U.S.C. § 283, enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, subsidiaries, parents, licensees, assigns, and customers, and all others acting in concert or participation with them, from further acts of infringing, inducing infringement, and/or contributing to the infringement of Asserted Patent, including:
    a. shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory

      not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, covered by the Asserted Patent or any reproductions, counterfeit copies, or colorable imitations thereof;

  b. using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Webstore, listings, or any other domain name that is being used to sell or is the means by which Defendant could continue to sell Counterfeit Products;

  c. operating and/or hosting websites at the Infringing Webstore and any other domain names registered or operated by Defendant that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product covered by the Asserted Patent or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold; and

  d. possessing any product covered by the Asserted Patent or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Asserted Patent. As part of compliance with this provision, we ask that Defendant or those who possess Defendant's infringing goods, segregate and destroy infringing goods;

3. An award of damages for Defendant's infringement of the Asserted Patent in an amount to be determined at trial as provided under 35 U.S.C. § 284, including enhanced damages due to, for example, Defendant's willful infringement of the Asserted Patent;

4. An award of pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

5. A finding that this case is an exceptional case under 35 U.S.C. § 285;

6. An award of reasonable attorneys' fees and costs incurred in connection with this action;

7. That Defendant, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff's a written report under oath setting forth in detail the manner in which Defendant has complied with any and all injunctive relief ordered by this Court;

8. That Defendant account for and pay over to Plaintiff any and all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the Mark be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. § 1117;

9. Entry of an order that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including any Internet search engines, Webstore hosts or its administrators that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendant engage in the sale of Counterfeit Products under the Asserted Patent; and

10. Grant Plaintiff such other and further legal relief as may be just and proper.

Respectfully Submitted,

Dated: November 20, 2025                              By:            /s/ Kevin Keener
                                                              Kevin J. Keener
                                                              DC # 6296898
                                                              Keener & Associates, P.C.
                                                              161 N. Clark Street, Suite #1600
                                                              Chicago, IL 60601
                                                              (312) 375-1573
                                                              kevin.keener@keenerlegal.com